### FREDERICK A. WHEELER, Respondent, *v.* EDWIN C. B. GARCIA, Appellant.

Where upon a contract to deliver certain shares of stock " at seller's option, sixty days," the purchaser makes his demand for the stock at the proper time and in the proper form, is then ready to pay the price, and is refused the delivery on the ground that the seller was not able to make it, it is not necessary to the former's right of action for the breach that he should have made an actual offer or tender of the money. (DANIELS and JAMES, JJ., *contra.*)

(Submitted April 5th, 1869, held over the June term for further consideration, and decided at the September term, 1869.)

THE plaintiff brings this action to recover damages for the non-delivery of 1,000 shares of the capital stock of the Downieville Gold Mining Company, pursuant to a contract made on the 24th day of May, 1866; and also for non-delivery of the same number of shares of the stock of the same company pursuant to a contract made on the 12th day of June, 1866. Both contracts are alleged to have been made by the defendant with Geo. P. Hart & Co., for the benefit of the plaintiff, and to have been assigned to him, and they were, respectively, for the delivery of the shares " at seller's option, sixty days." At the close of the evidence, the defendant's counsel " moved to dismiss the complaint on the ground that plaintiff had not proved an offer or tender of his money with the demand," which motion was denied and the defendant excepted. Exceptions were taken to the exclusion of testimony, which are referred to in the opinion of the

court. No exceptions were taken to the charge, and no requests to charge were presented. The jury found for the plaintiff $4,873.63. The judgment upon the verdict was affirmed by the General Term of the first district. The defendant now appeals to this court.

*Henry Whittaker*, for appellant.

*Stephen P. Russell*, for respondent.

HUNT, Ch. J. Many questions are argued by the briefs of the parties, which do not arise upon the case as it is presented in this court. Questions of law strictly, upon exceptions taken or questions made at the trial, are all that this appellate court can consider, and these in the precise form in which they appear upon the record. In the present case, the defendant moved to dismiss the complaint (for a nonsuit in substance) on the ground that the plaintiff had not proved an offer or tender of his money with the demand. This assumes that a demand was made, in proper form and at the proper time, as to each contract, and that the plaintiff was claimed to be at fault only in not then tendering the money. It is not competent to the defendant, after assuming the contrary at the trial and permitting the plaintiff and the court to act upon that assumption, now to say that there was no sufficient demand. (*Binsse* v. *Wood*, 37 N. Y., 526.) The elaborate argument of the appellant that the plaintiff was bound to prove a demand of performance by the defendant, at the time specified in the contract, will not, therefore, avail him. He is limited to the ground taken on the trial, to wit: That no offer or tender of the money was made with the demand; neither does the question arise that the verdict is unsupported by evidence. No request was made for a decision on that point, and none was given. The defendant chose to take his chance with the jury upon the facts shown, and no legal question is presented on which he can ask our interposition. The objection of not tendering the money I will now consider. The defendant agreed to deliver the

shares of stock at such time as he should think fit, within sixty days, and the plaintiff agreed to pay him therefor the price specified in the contract. The defendant not tendering the shares of stock himself, the plaintiff requires him to deliver them, and he testifies that, at the time of this demand, he was ready to pay the price agreed upon if the defendant had delivered them. The defendant replied to the demand that he could not; he was not able. Under the circumstances, it was not necessary to make an actual production and formal tender of the money; it would have been an idle ceremony.

Assuming that the demand was properly and sufficiently made, and that, at the time and place of making the same, the plaintiff was ready and prepared to pay on his part, the cases of *Coonley* v. *Anderson* (1 Hill, 519, 523), and of *Bronson* v. *Wiman* (4 Seld., 182), are clear authorities that the plaintiff was not bound to make an actual production and offer of his money.

The exclusion of certain evidence is complained of, which it is said should have been admitted as tending to sustain the second defence set up in the answer. That defence contained an allegation, that the plaintiff and Hart, his broker, conspired with each other, falsely and fraudulently to make it known that the company, in question, was solvent, and that its shares were of great value, when the company was not solvent and the shares were not of any real value. It was further alleged, that the same parties caused to be issued a large number of fraudulent and spurious shares of the said stock, and did represent the same as good and valid shares of stock. The plaintiff, Wheeler, being under cross-examination, the defendant's counsel put to him the following questions: Were you not operating in a pool to control the whole of the Downieville gold mining stock? Ans. Do you mean as one of the pool, or a party in the pool? Defendant's counsel. Yes, sir. Ans. No, sir; I never was a party in the pool. Ques. Was not that stock controlled by a pool? Objected to; sustained and exception. It seems to be assumed in these

questions, that to be a party to a pool, is a criminal, or at least a disreputable position. It may be, or it may not be. Whatever was its character, the plaintiff testified that he had nothing to do with it, and there was no occasion further to prosecute the inquiry.

The inquiry proceeds thus: Ques. Between the 24th of May, the time of making this first contract and the 5th of November following, at the time the price of the stock appears to be nearly three dollars a share, did you not either yourself, or in combination with other persons, claim to control the shares to the entire amount of the capital stock of this Downieville gold mining company, and have you not. so stated? Ans. Well, that is a difficult question for me to answer; your question covers a good deal of ground; there are three questions in one. The question is repeated. Objected to; objection sustained and exception.

The question was not whether the plaintiff did actually control the stock; whether he claimed to control the shares of this stock, or whether he had so stated, was quite immaterial. The defendant had agreed to deliver certain of the shares at a price fixed, and had failed to do so. Whether the plaintiff boasted that he controlled the entire capital of the company, was not of the least importance to the question involved in the trial. There was no issue in relation to such claim in the pleadings, nor any legitimate question on the trial.

At a subsequent recross-examination of the same witness, the defendant's counsel asked him these questions: Did it not (the price of the stock in question) fall almost immediately after November 5th? Ans. It fell in November. Ques. To a great extent? Ans. Yes, sir. Ques. And did it fall below forty cents a share? Ans. During the month of November, I think it did. Ques. What occasioned the fall? Objected to; objection sustained and exception. It is claimed, if I understand the argument, that this evidence was competent under the second answer, as tending to show a fraudulent conspiracy by the plaintiff and others to elevate the stock in

question. I do not perceive how it shows it or tends to show it. The price of the stock fell during the month of November. How could this fact, or the inquiry of what occasioned its fall, tend to show that the plaintiff had made false representations as to its value, or that he had aided in an over issue of its shares. There is no connection between the circumstances. No such object or connection was avowed on the trial, and the defendant cannot now put forth what he did not there pretend.

The doubtful questions on the trial, were the questions of fact. These were sharply contested, and the jury found them against the defendant.

The judgment should be affirmed with costs.

DANIELS, J. (dissenting). The exceptions which were taken to the exclusion of the answers proposed to be given to questions propounded to the witness, Hart, who was the plaintiff's assignor, present no grounds upon which the judgment appealed from can be properly reversed, for there was nothing in the questions themselves which indicated in any manner that the answers to them could be pertinent to any inquiry involved in the issue joined between the parties; and they were accompanied with no offer of further evidence which, with that proposed to be given by the answers, would have rendered them pertinent to the case. The action was brought to recover damages arising out of the non-performance of two contracts made by the defendant for the sale and delivery of mining stock. The stock which the defendant contracted to sell and deliver to the assignor of the plaintiff was to have been delivered within sixty days after the contracts were respectively made. No place was specified, in the contracts, at which the stock was to be delivered, but the delivery, and the payment of the price was to take place at the same time. This was expressly provided for by the terms of the contracts. These, therefore, were concurrent acts, and neither party could recover against the other for a failure to perform on his part, without an offer of performance on his own.

part, at the times when the contracts were, by their terms, to have been performed. (*Dunham* v. *Pettee*, 4 Seld., 508; *Lester* v. *Jewett*, 1 Kernan, 453.)    The contracts in this case differed from those involved in *Coonley* v. *Anderson* (1 Hill, 519), and *Bronson* v. *Wiman* (4 Seld., 182), in the circumstance that in those cases the property contracted to be sold was to be delivered at a place designated and agreed upon between the parties, while in this no selection or designation of a place for performance was made.    This circumstance renders the principle applied to the decision of those cases inapplicable to the present controversy and subjects it to the principle previously alluded to.

Under that principle, it was necessary that the plaintiff should not only establish an omission on the part of the defendant to perform the agreement by a tender of the stock which he agreed to deliver, but beyond that to prove that his assignor was ready and willing to receive it, and offered to perform his part of the contracts by the payment of the purchase money, at the times when, by their terms, the contracts were to have been performed.

It may well be doubted whether the evidence brought this case within that rule, for no demand of the stock or offer of performance was proved to have been made on the part of the plaintiff's assignor, at the times when the defendant had agreed to deliver the stock and receive the price of it.    Precisely when the assignor of the plaintiff demanded the stock of the defendant was not made to appear, but it was shown that it was not done at the time when the contracts, or either of them, were to have been performed.    He was asked whether he demanded the stock when it became due, and answered, "I think so; I cannot state positively that I demanded it at that time, but about that time," which fell far short of the demand at the times fixed by the contracts; and this was unaccompanied by any offer of performance upon his own part.

An effort was made to prove that the defendant had dispensed with the necessity of an offer of performance on the

part of the assignor, by an unqualified refusal to deliver the stock on account of his inability to do so. Upon this subject the witness stated that the defendant said that he could not deliver the stock; that he was not able to do so. But this reply was made to the demand of it, mentioned by the same witness. And, as it did not appear that the demand was made at or before the time when the contracts, by their terms, were to have been performed, this could not be sufficient to dispense with the offer of performance required by the law of the assignor.

If the defendant had refused to deliver the stock before, or at the time when he had bound himself to do so, that would undoubtedly have dispensed with a formal offer of performance on the part of the vendee. But for the purpose of having the refusal attended with that result, it was necessary that it should have been shown to have occurred before the vendee was in default, on his own part, by neglecting to offer the performance of the act of payment which had been imposed upon him. This was not proved. Proving that it was about the time, which was all that the evidence of the witness Hart amounted to, was not sufficient for that purpose. For it was just as consistent with the supposition that it was after, as it was with the idea that it was before the times when the contracts were to have been performed. It was clearly insufficient to justify the jury in concluding that the refusal either preceded or was made at the time when performance was to have taken place. And for that reason it did not excuse a formal offer of performance on the part of the vendee.

The plaintiff, himself, stated that he demanded the stock, and that the defendant declined to have anything to do with him; saying that he would settle with Mr. Hart. This demand did not excuse Hart's failure to offer performance of his part of the contracts, because the plaintiff stated that it was made after both contracts had become due, and perhaps two weeks afterwards. Even if it could have been construed into a refusal to perform, it would have been of no avail to

the plaintiff, for at that time the defendant had been discharged from his obligations to perform, by the failure of the vendee to offer performance on his own part.

The law required more than a mere demand of performance, accompanied with the ability, on the part of the vendee, to perform his part of the contracts ; for, in addition to that, an actual offer of such performance was necessary, where that had not been at the time dispensed with by some act or refusal on the part of the defendant. And the evidence in this case proved no such act or refusal. If anything of that kind had taken place, it was for the plaintiff to have established it, for that would have relieved him from the performance of what the law otherwise required to be proven, for the purpose of authorizing a recovery by him in the action. In the absence of this proof, the court should have nonsuited the plaintiff, and the exception to its refusal to do so, was well taken.

The evidence afterwards given, concerning the defendant's failure, was insufficient to correct the error, even if proof of absolute insolvency would have been attended with that result, which certainly may, without any impropriety, be seriously doubted. The judgment should be reversed and a new trial ordered.

MASON, GROVER, LOTT and MURRAY, JJ., concurred with HUNT, Ch. J., for affirmance.

JAMES, J., concurred with DANIELS, J., for reversal, on the grounds stated in his opinion. He also thought the court below erred in sustaining the objection to the question in regard to "the pool" referred to in the opinion of HUNT, Ch. J.

WOODRUFF, J., did not vote.

Judgment affirmed.